FILED
2013 Sep-06  AM 10:16
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| MICHAEL EUGENE BLACK, | ) | |
| | ) | |
| Plaintiff , | ) | |
| | ) | |
| v. | ) | Case No. 2:12-cv-00790-JHH-MHH |
| | ) | |
| RONNIE MAY, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Michael Eugene Black, hereinafter referred to as "plaintiff," filed a *pro se* complaint pursuant to 42 U.S.C. § 1983 alleging that rights, privileges, or immunities afforded him under the Constitution or laws of the United States were abridged during his incarceration at the Colbert County Jail in Tuscumbia, Alabama. (Doc. 1). Plaintiff is currently incarcerated at Staton Correctional Facility in Elmore, Alabama. Plaintiff names as defendants Colbert County Sheriff Ronnie May, Jail Administrator Anthony Pace, Jailers Mike Briley, "Roger," and Toby Carruthers, "Dr. Bates," Nurse Doris Pilkinton, and inmate Timothy Garner. Plaintiff seeks monetary relief. For the reasons stated below, this action is due to be dismissed pursuant to 28 U.S.C. § 1915A(b).

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, § 804, 110 Stat. 1321, and 28 U.S.C. § 1915A, requires this Court to screen complaints filed by prisoners against officers or employees of governmental entities and to dismiss the complaint or any portion of the complaint that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief. Thus, under § 1915A, the Court may *sua sponte* dismiss a prisoner's complaint prior to service. In order to protect a *pro se* prisoner's right of access to the courts, these complaints are read by less stringent standards than formal pleadings drafted by lawyers. *See, e.g., Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Harmon v. Berry*, 728 F.2d 1407, 1409 (11th Cir. 1984); *Watson v. Ault*, 525 F.2d 886, 891 (5th Cir. 1976).

## I.   FACTUAL ALLEGATIONS

On September 2, 2011, while he was housed in the sick bay of the Colbert County Jail, plaintiff called Ervin Fisher.[1] (Doc. 1 at p. 7). Plaintiff alleges, "[t]he phone call revealed that Fisher and I knew everything about the jury rigging in my trial, Aug. 23-24, 2011." (*Id.*). Plaintiff claims that as a result of his knowledge, "the

---

[1]   Plaintiff makes reference to Ervin Fisher throughout his complaint but does not state who Fisher is.

people in power of Colbert County" arranged a "hit" on him. (*Id.*). Plaintiff contends that Timothy Garner was appointed to be the "hitman." (*Id.*).

On September 13, 2011, Colbert County Jailer Roger placed inmate Timothy Garner in a sick bay cell with plaintiff upon Nurse Doris Pilkinton's orders. (Doc. 1 at p. 5.) Within thirty minutes, inmate Garner told plaintiff, "'What do you expect when I stomp your sissy ass?'" (*Id.*). Plaintiff contacted Ervin Fisher and informed him of Garner's threat. (*Id.*). Fisher then called plaintiff's attorney, Steve Aldridge, who called Sheriff Ronnie May. (*Id.*). Sheriff May contacted the jail, and plaintiff was placed in isolation. (*Id.*).

On September 14, 2011, plaintiff asked Jailer Toby Carruthers for the name of the inmate who threatened him. (Doc. 1 at p. 5). At first, Carruthers refused to give plaintiff the inmate's name. (*Id.*). Plaintiff informed Carruthers that he was reporting the incident to federal authorities. (*Id.*). Carruthers wrote Timothy Garner's name on a piece of paper and gave it to plaintiff. (*Id.*). Plaintiff mailed the paper to Ervin Fisher along with a brief account of the incident that took place with Garner. (*Id.*). Carruthers mailed plaintiff's letter, and it reached Fisher. (*Id.*).

Also on September 14, 2011, plaintiff wrote detailed letters to Fisher and plaintiff's attorney, Steve Aldridge, concerning the incident with Garner. (Doc. 1 at p. 5). Plaintiff instructed Aldridge to subpoena jury foreman Joe Garrett for a hearing

on plaintiff's motion for a new trial, which was scheduled for September 20, 2011. (*Id*.). Joe Garrett had a business relationship with the Spring Valley Water System and is related to Johnny Garrett, a board member of the Spring Valley Water System. (*Id*.). Plaintiff was charged with a crime in which the alleged victim, Tony Jones, is an employee of the Spring Valley Water System. (*Id*.). Plaintiff gave the letters to jail staff in sealed, stamped envelopes, but Fisher and Aldridge did not receive the letters. (*Id*.). Jail staff also held plaintiff's subsequent letters to Fisher for many days before mailing them. (*Id*.).

On September 19, 2011, plaintiff called Ervin Fisher. (Doc. 1 at p. 5). Fisher informed plaintiff that jail staff denied that Timothy Garner was in the jail on September 13, 2011. (Doc. 1 at p. 6). Fisher also stated that he still had not received plaintiff's letter, which was mailed on September 14, 2011.[2] (*Id*.). Plaintiff told Fisher that he feared for his life, and Fisher contacted plaintiff's attorney, Steve Aldridge. (*Id*.). Aldridge contacted Sheriff Ronnie May, who then called the jail. (*Id*.). Around 5:40 p.m., Jailer Mike Briley came to the sick bay where plaintiff was housed and insisted that plaintiff stop calling Aldridge. (*Id*.). Briley told plaintiff that his safety would be handled "'within the walls of the Jail.'" (*Id*.). Plaintiff

_____

[2]     Plaintiff states that Fisher received the first letter he wrote and gave to Defendant Carruthers to mail on September 14, 2011. (Doc. 1 at p. 5). Therefore, it is assumed that Fisher did not receive the second letter plaintiff wrote on September 14, 2011, and gave to jail staff to mail.

4

responded that jail staff was not concerned about his safety and had stopped his mail. (Doc. 1 at p. 6). Briley replied, "'You don't have any rights. You don't have any rights to the U.S. Mail. You don't have the right to use the phone.'" (*Id*.). Later, the sick bay phone, which had been turned off intermittently before then, was turned off for "days at a time." (*Id*.). Plaintiff alleges that the "actions of the jailers made [him] fear for [his] life." (*Id*.).

On September 20, 2011, a hearing was held in plaintiff's criminal case on his motion for a new trial. (Doc. 1 at p. 6). Plaintiff's attorney did not receive plaintiff's September 14, 2011, letter instructing him to subpoena jury foreman Joe Garrett. (*Id*.). Therefore, plaintiff was not able to question Joe Garrett about his connection to the Spring Valley Water System and the alleged victim, Tony Jones. (*Id*.). Plaintiff also could not question Joe Garrett about his family relationship with Johnny Garrett, a board member of the Spring Valley Water System. (*Id*.).

Plaintiff alleges that his knowledge of jury rigging resulted in two attempts on his life by "the people in power." (Doc. 1 at p. 7). He claims, "I was not provided a safe environment to live and was targeted for injury and death to cover up their denial of my rights to due process of law, denial of my rights to consult and instruct my attorney, denial of my rights to the U.S. mail and denial of my first amendment rights of freedom of speech and freedom of expression." (*Id*.).

On September 24, 2011, Nurse Doris Pilkinton was on duty at the jail.  (Doc. 1 at p. 7).  About 1:00 p.m., a jailer gave plaintiff Amantadine, a medication prescribed to him for tardive dyskinesia.  (*Id*.).  After taking the medication, plaintiff began to experience severe chest pains.  (*Id*.).  Plaintiff was prescribed Amantadine since 2010 and had not experienced any ill effects.  (*Id*.).  At 9:00 p.m., plaintiff took another dose of Amantadine and experienced severe chest pains again.  (*Id*.).

On September 25, 2011, plaintiff took a morning dose of Amantadine and had another occurrence of chest pains.  (Doc. 1 at p. 7).  Plaintiff alleges, "I came to the conclusion that there was a connection between the medication that they claimed was [A]mantadine and the chest pain I was experiencing."  (*Id*.).  Plaintiff began to "cheek" the medication each time it was brought to him.  (*Id*.).  Plaintiff placed a sick call request and was seen by Pilkinton on September 29 or 30, 2011.  (*Id*.).  Plaintiff requested an EKG but Pilkinton refused.  (*Id*.).  Pilkinton became irate over plaintiff "cheeking" the pills.  (*Id*.).  Jailer Heath went to the sick bay to retrieve the pills.  (Doc. 1 at p. 7).  Plaintiff alleges that Pilkinton was under the supervision of Dr. Bates and that Anthony Pace was the Jail Administrator at all relevant times.  (*Id*.).

## II.   <u>DISCUSSION</u>

### A.   <u>Eighth Amendment – Failure to Protect</u>

The Eighth Amendment's prohibition on cruel and unusual punishment imposes upon institutional officials the duty to "'take reasonable measures to guarantee the safety of the inmates'" in their custody. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984)).  It is clear, however, that not every injury suffered by an inmate "translates into constitutional liability for prison officials responsible for [the inmate's] safety." *Farmer*, 511 U.S. at 834; *see also Zatler v. Wainwright*, 802 F.2d 397, 400 (11th Cir. 1986).

"In order to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the tort to constitutional stature." *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso County Jail*, 642 F.2d 134, 136 (5th Cir. 1981)).  It is only when institutional officials' deliberate indifference to a known danger or risk exposes an inmate to objectively, "sufficiently serious" harm that a constitutional violation occurs.  *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)); *see also Brown v. Hughes*, 894 F.2d 1533, 1537

(11th Cir. 1990) ("When officials become aware of a threat to an inmate's health and safety, the [E]ighth [A]mendment's proscription against cruel and unusual punishment imposes a duty to provide reasonable protection.").

A danger or risk is "known" only if the institutional official is both "aware of facts from which the inference could be drawn that a substantial risk of harm exists, and he . . . draw[s] th[at] inference." *Farmer*, 511 U.S. at 837. "[A]n official's failure to alleviate a significant risk that he should have perceived, but did not," is not sufficient to establish liability on the part of the official. *Id*. at 838. Furthermore, "the known risk of injury must be a 'strong likelihood, rather than a mere possibility.'" *Edwards v. Gilbert*, 867 F.2d 1271, 1276 (11th Cir. 1989) (quoting *State Bank of St. Charles v. Camic*, 712 F.2d 1140, 1146 (7th Cir. 1983)).

Once it is established that an institutional official knew of a substantial danger or risk to an inmate, it must then be shown that the official was deliberately indifferent to that risk. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Farmer*, 511 U.S. at 842. Deliberate indifference requires "a state of mind more blameworthy than negligence." *Id*. at 835.

Plaintiff alleges that after Inmate Garner was placed in the same cell with him, Garner told plaintiff, "'What do you expect when I stomp your sissy ass?'" (Doc. 1 at p. 5.)  Plaintiff does not allege that Inmate Garner attacked him or harmed him in any way.  "Verbal taunts by other inmates do not pose a serious risk to the prisoner's health or safety under the Eighth or Fourteenth Amendment."  *Evans v. City of Zebulon, GA*, 351 F.3d 485, 495-96 (11th Cir. 2003), *vacated on other grounds*, 364 F.3d 1298 (11th Cir. 2004); *see also Edwards v. Gilbert*, 867 F.2d 1271, 1274, n.1 (11th Cir. 1989) (a petitioner must allege more than verbal taunts in order to make a claim that jailers have violated their duty of protection or deprived the petitioner of his constitutional rights).   Therefore,  plaintiff  has  failed  to  state  an  Eighth Amendment failure to protect claim against defendants based on Garner's verbal threats, and plaintiff's claims are due to be dismissed.

To the extent plaintiff alleges that Inmate Garner acted as a "hitman" once plaintiff became aware that the jury in his criminal trial had been rigged, his claim against Garner fails because an action under § 1983 does not lie against a private person in his or her individual capacity.  Specifically, § 1983 provides a remedy for deprivations of federally protected rights only if such claimed deprivations are the result of state action.  *See District of Columbia v. Carter*, 409 U.S. 418, 423 (1973). Courts have recognized that Congress, in enacting § 1983, meant to give a remedy to

parties deprived of constitutional rights, privileges, and immunities by an official's abuse of his or her discretionary powers. *See Monroe v. Pape*, 365 U.S. 167 (1961). One of the two essential elements in any § 1983 action is that "the conduct complained of was committed by a person acting under color of state law." *Parratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled in part on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986). "The traditional definition of acting under color of state law requires that the defendants in a § 1983 action have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 48 (1988) (quoting *United States v. Classic*, 313 U.S. 299, 326 (1941)).

Nevertheless, a private defendant can be held liable in a § 1983 action if he or she acts in concert with state officials in depriving a plaintiff of constitutional rights. *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1987); *Dennis v. Sparks*, 449 U.S. 24 (1980). "In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged. It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman v. Graddick*, 739 F.2d 553, 557 (11th Cir. 1984). A complaint may justifiably be dismissed because of the conclusory, vague, or general nature of the allegations of conspiracy. *See id*. The "naked assertion" of a conspiracy without "supporting operative facts" is not sufficient to state a claim under § 1983.

*Phillips v. Mashburn*, 746 F.2d 782, 785 (11th Cir. 1984).  A plaintiff attempting to prove a § 1983 conspiracy must show that the parties "reached an understanding" to deny the plaintiff his or her rights.  *Addickes v. S.H. Kress& Co.*, 398 U.S. 144, 152 (1970).   In other words, a plaintiff must show some evidence of an agreement between the defendants.  *See Bailey v. Bd. of County Comm'rs of Alachua County*, 956 F.2d 1112, 1122 (11th Cir. 1992).

In the present case, plaintiff has not stated sufficient facts to support a claim that Garner conspired with other defendants to deprive plaintiff of his constitutional rights.   Plaintiff does not allege any supporting operative facts that defendants conspired to physically harm him or that they "reached an understanding" to have his constitutional rights violated.  *Addickes*, 398 U.S. at 152.  Instead, plaintiff has made only conclusory statements that a conspiracy among defendants existed.  Therefore, plaintiff's claims that jail and medical staff conspired with Inmate Garner to physically harm plaintiff are due to be dismissed.

## B.   First Amendment – Interference with Legal Mail

Plaintiff claims that Sheriff May and staff interfered with plaintiff's mail to his attorney.   Interference with legal mail implicates a prison inmate's rights to free speech and to access the courts as guaranteed by the First Amendment.  *See Al-Amin v. Smith*, 511 F.3d 1317, 1334 (11th Cir. 2008).  However, plaintiff does not allege

that Sheriff May personally interfered with his legal mail.  Neither does he associate any of the named defendants with his claims concerning his legal mail.  Conclusory, vague, and general allegations are insufficient to state a claim upon which relief through § 1983 can be granted.  *See Fullman*, 739 F.2d at 556-57.  At most, plaintiff complains that Briley told him he did not have rights to the mail or the telephone.  However, plaintiff does not allege that Briley personally interfered with his mail or directed jail staff to stop plaintiff's outgoing mail.  Neither does plaintiff have personal knowledge that Briley turned off the sick bay telephone.[3]  Briley's verbal comments, without more, are insufficient to support a constitutional claim.  Therefore, plaintiff's First Amendment claims are due to be dismissed for failing to state a claim upon which relief may be granted.

## C.  <u>Eighth Amendment – Medical Claims</u>

Plaintiff alleges that he began having severe chest pains after taking Amantadine.  He claims he requested sick call and was seen by Nurse Pilkinton on September 29 or 30, 2011.  Plaintiff requested an EKG but Pilkinton refused.

The United States Supreme Court has held that it is only deliberate indifference to serious medical needs which is actionable under 42 U.S.C. § 1983. *See Estelle v.*

---

[3]   Plaintiff does not allege that he was unable to communicate with his attorney as a result of not being able to use the telephone.

*Gamble*, 429 U.S. 97 (1976).  Indeed, the conduct of prison officials must run counter to evolving standards of decency or involve the unnecessary and wanton infliction of pain to be actionable under § 1983.  *See Bass v. Sullivan*, 550 F.2d 229 (5th Cir. 1977).  Mere negligence is insufficient to support a constitutional claim.  *See Fielder v. Brossard*, 590 F.2d 105 (5th Cir. 1979).  Moreover, an accidental or inadvertent failure to provide medical care, or negligent diagnosis or treatment of a medical condition, does not constitute an actionable wrong under the Eighth Amendment.  *See Ramos v. Lamm*, 639 F.2d 559 (10th Cir. 1980).  Additionally, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle*, 429 U.S. at 106.  Neither will a mere difference of opinion between an inmate and the institution's medical staff as to treatment and diagnosis alone give rise to a cause of action under the Eighth Amendment.  *See Smart v. Villar*, 547 F.2d 112 (10th Cir. 1976); *see also Estelle*, 429 U.S. at 106-108.

Deliberate indifference can be shown in a variety of ways.  As the Eleventh Circuit Court of Appeals noted:

> Our cases have consistently held that knowledge of the need for medical care and an intentional refusal to provide that care constitutes deliberate indifference.  Medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" constitutes deliberate indifference. Additionally, when the need for medical treatment is

13

> obvious, medical care that is so cursory as to amount to no
> treatment at all may constitute deliberate indifference.

*Adams v. Poag*, 61 F.3d 1537, 1543 (11th Cir. 1995) (internal citations omitted).

An official also acts with deliberate indifference when he intentionally delays providing an inmate with access to medical treatment, knowing that the inmate has a life-threatening or urgent medical condition that would be exacerbated by delay. *See Hill v. DeKalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1186-87 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730 (2002); *see also Harris v. Coweta County*, 21 F.3d 388, 394 (11th Cir. 1994).  Delay in access to medical treatment can violate the Eighth Amendment when it is "tantamount to 'unnecessary and wanton infliction of pain.'" *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (internal citations omitted).

"In contrast, delay or even denial of medical treatment for superficial, non-serious physical conditions does not constitute an Eighth Amendment violation." *Hill*, 40 F.3d at 1186-87.  A medical need is considered serious when delay results in an inmate suffering "a lifelong handicap or permanent loss." *Monmouth County Corr. Inst. Inmates v. Lorenzo*, 834 F.2d 326, 347 (3rd Cir. 1987).  An inmate claiming an unconstitutional delay in medical treatment "must place verifying

medical evidence in the record to establish the detrimental effect of the delay in medical treatment to succeed." *Hill*, 40 F.3d at 1188.

### 1.   <u>Dr. Bates & Jail Administrator Anthony Pace</u>

Plaintiff does not allege that defendants Bates and Pace personally participated in or had any direct involvement with his medical treatment.  Instead, plaintiff claims that Dr. Bates supervised Nurse Pilkinton, and Pace was the Jail Administrator at all relevant times.  Plaintiff cannot rely on doctrines of vicarious liability or respondeat superior in establishing liability pursuant to § 1983.  *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 690-92 (1978); *Harris v. Ostrout*, 65 F.3d 912, 917 (11th Cir. 1995).  Absent some allegation that Bates and Pace knew of, sanctioned, participated in, or was otherwise causally connected to the constitutional violations complained of, a claim against them based on the actions of their subordinate is insufficient to state a cause of action under 42 U.S.C. § 1983.  *See Valdes v. Crosby*, 450 F.3d 1231, 1236-37 (11th Cir. 2006).  Therefore, plaintiff's Eighth Amendment medical claims against Defendants Bates and Pace are due to be dismissed for failing to state a claim upon which relief may be granted.

### 2.   <u>Nurse Doris Pilkinton</u>

Plaintiff complains that Pilkinton failed to give him an EKG after he began suffering chest pains.  Taking plaintiff's complaint as true, it appears he was suffering

15

from a serious medical need.  However, plaintiff has not alleged that Pilkinton was deliberately indifferent to that need.  Plaintiff does not allege that Pilkinton failed to render any medical care to him when he presented with severe chest pains or that the treatment Pilkinton provided was "so grossly incompetent, inadequate, or excessive as to shock the conscience." *Adams v. Poag*, 61 F.3d 1537, 1544-45 (11th Cir. 1995) (whether governmental actors "should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for grounding liability under the Eighth Amendment") (quoting *Estelle*, 429 U.S. at 107).  Rather, plaintiff merely complains that Pilkinton did not give him an EKG as he requested.  The fact that plaintiff disagrees with the efficacy of the treatment recommended or simply preferred a different course of treatment does not state a constitutional claim.  Indeed, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis and course of treatment [does not] support a claim of cruel and unusual punishment." *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).

Additionally, to the extent plaintiff claims that his medical condition was the result of another attempt on his life, he has not alleged any facts to demonstrate that Pilkinton, or any other defendant, intentionally administered medication to him to

16

cause him physical harm.  As stated previously, conclusory, vague, and general allegations are insufficient to state a claim upon which relief under § 1983 can be granted.  *See Fullman*, 739 F.2d at 556-57.  Based on the foregoing, plaintiff's Eighth Amendment medical claim against Defendant Pilkinton is due to be dismissed.

A separate order will be entered consistent with this memorandum opinion.

The Clerk of Court is **DIRECTED** to serve a copy of this memorandum opinion upon the plaintiff.

**DONE** this the ___6th___ day of September, 2013.

_____

SENIOR UNITED STATES DISTRICT JUDGE